UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXANDER HOLLEY,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER COOK, et al.,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:20cv170 (MPS) |

## **INITIAL REVIEW ORDER**

The plaintiff, Alexander Holley, is a sentenced inmate in the custody of the Department of Correction ("DOC") currently incarcerated at Brooklyn Correctional Institution ("Brooklyn"). He has filed this civil action under 42 U.S.C. § 1983 against DOC Commissioner Cook, Warden Stephen Faucher, Director of Classification and Population Management David Maiga, and Counselor Supervisor of Offender Classification and Population Management Elizabeth Tugie in their official and individual capacities.[1] Compl., Doc. #1.

He alleges violation of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution[2] based on his classification as an inmate who has committed a sexual offense. The plaintiff seeks compensatory, declaratory and injunctive relief. After initial

---

[1] The court construes his complaint broadly to assert these claims against the defendants in their official capacities.

[2] The plaintiff also asserts that defendants violated his rights under the Constitution of the State of Connecticut. However, the court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

1

review, the court will permit the plaintiff's claims for violation of the Fourteenth Amendment to proceed.

## I. LEGAL STANDARD

Pursuant to section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the Complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## II. FACTUAL ALLEGATIONS

The plaintiff is serving a sentence for his conviction based on criminal conduct committed in 2014.[3] Compl., Doc. #1. at ¶ 1. On July 22, 2018, the plaintiff became eligible for a level reduction that would permit him to be housed at a level 2 facility. *Id.* at ¶¶ 4, 18.

---

[3]The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). *See* Doc and Connecticut Judicial Websites: http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=146223; https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=08a1aa0e-4ebf-

Under Administrative Directive 9.2, the Commissioner, through the Director of Classification and Population Management, conducts a classification of each inmate to determine the inmate's risk and need level for appropriate confinement, location, treatment, program, and employment assignments. *Id.* at ¶ 6. The classification process includes a "risk assessment" and a "needs assessment" of each inmate. *Id.* at ¶ 7. The "risk assessment" and "needs assessments" involve assigning scores from one to five for seven different risk categories. *Id.* Based on the classification process, the Commissioner develops an Offender Accountability Plan ("OAP") for each inmate. *Id.* at ¶ 8. The OAP sets forth programming and treatment recommendations. *Id.* An inmate's failure to comply an with OAP results in loss of certain benefits and privileges, including ineligibility for Risk Reduction Earned Credit ("RREC"), supervised community release, and parole. *Id.* at ¶ 9. Each inmate is assigned a score in a category called "Sex Treatment Needs" ("STN"). *Id.* at ¶ 10. If an inmate has a "problematic sexual history," the inmate will receive an STN score of greater than S-1. *Id.*

On January 18, 2017, Commissioner Cook, Director of Classification Maiga, and Counselor Supervisor of Classification Tugie assigned the plaintiff an STN score of S-3 based on information in a New Haven Police Department report about an incident on August 21, 2010, in which the plaintiff was charged with two counts of kidnapping, one count of sexual assault, and one count of risk of injury to a child. *Id.* at ¶¶ 5, 11-12. According to the plaintiff, a score of S-3 is reserved for inmates who have a current conviction, pending charges, or "known history" of sexual offenses involving physical contact with the victim. *Id.* at ¶ 11. Based on the conduct

---

4c53-ad3b-a3a619ada7b3, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=231ceeef-afda-4330-9dbe-e8cc5683da05

underlying his arrest on August 21, 2010, the plaintiff was found guilty of risk of an injury to a child and not guilty on the remaining charges, and he was sentenced to fifteen months of imprisonment. *Id.* at ¶ 5.

The court takes judicial notice of the following facts underlying the plaintiff's criminal case stemming from his arrest August 21, 2010, as reflected in the Memorandum of Decision on his appeal to the Connecticut Appellate Court:[4]

> On the afternoon of August 21, 2010, K, the complainant, received a telephone call from her male friend. He informed K of a paid opportunity to braid the hair of the defendant's girlfriend in New Haven. K, along with her young child, Z, went to New Haven and met with her friend, the defendant, and the defendant's girlfriend. They traveled together to the defendant's apartment. When they arrived, K, Z, and the defendant's girlfriend entered the bedroom where Z sat on the bed watching television as K braided the girlfriend's hair in a nearby chair. Z eventually fell asleep at the foot of the bed. Sometime after Z had fallen asleep, the defendant entered the bedroom and began enticing his girlfriend to perform oral sex on him. K then left the bedroom in order to speak to her male friend in the kitchen. When the defendant followed K into the kitchen, she informed him that she intended to leave. The defendant began "clinking" what K thought was a gun, at which point K agreed to finish braiding the girlfriend's hair.
>
> At this point, K's friend left the apartment under the pretext of going to a store. K returned to the bedroom and continued braiding the girlfriend's hair while Z still slept on the bed. The defendant then entered the bedroom, locked the door behind him, and smoked crack cocaine with his girlfriend, leaving the crack cocaine and paraphernalia on the bedroom floor when they were finished.
>
> Meanwhile, K's friend flagged down New Haven police Officer Paul Bicki, telling Bicki that his female friend, K, along with her young child, Z, were in danger and needed police assistance at the defendant's apartment. Bicki went to the defendant's apartment, announced his presence, and requested that someone come to the door. He received no response. Bicki observed that a light was on in the bedroom where K and Z purportedly were in danger and contacted his supervisor for further instructions. With the assistance

---

[4]*State v. Holley*, 144 Conn. App. 558, 560–61 (2013).

of other officers who had arrived on scene, Bicki gained entry to the apartment through a living room window.

Upon entering the apartment, Bicki immediately opened the front door and let the other officers in. The officers approached the bedroom door and knocked, but received no response. The officers attempted to open the door, but discovered that the defendant was holding it shut. After opening the door, Bicki and fellow Officer Kealyn Nivakoff observed the defendant standing at the door, K and the defendant's girlfriend lying naked on the bed, and Z lying at the foot of the same bed. The defendant refused to comply with the officers' verbal commands to lie on the floor. When the officers attempted to restrain the defendant, a physical altercation ensued in a "very small space" between the bed and a wall. Bicki perceived the physical altercation as a "violent struggle...." The defendant flailed, punched, and kicked at the five officers who were attempting to restrain him. The bed, which Z was lying on throughout the altercation, was knocked back and forth significantly, "enough that if somebody who was sleeping [on the bed] would absolutely be woken up." The police eventually restrained and arrested the defendant.

As a result of his STN score assigned in 2017, the plaintiff was classified as a sex offender and he was required to have sex offender treatment as a program in his OAP. Compl., Doc. #1, at ¶ 13. The plaintiff signed his OAP, but he does not agree with it. *Id.* at ¶ 14.

During an STN hearing, the false assertion was made that the plaintiff's conviction of risk of injury to a child was sexual in nature. *Id.* at ¶ 16. The plaintiff appealed the classification decision to the Director of Classification Maiga, but Counselor Supervisor Tugie denied the appeal. *Id.* at ¶ 17. Although the plaintiff is eligible for a level reduction that would permit him to be housed at a level 2 facility, he did not receive a level reduction due to his STN score. *Id.* at ¶ 18.

### III.   DISCUSSION

The plaintiff's complaint asserts claims under the Fourteenth Amendment Due Process and Equal Protection Clauses, the Eighth Amendment, and the Fifth Amendment Double Jeopardy Clause against Commissioner Cook, Warden Stephen Faucher, Director Maiga, and Counselor Supervisor Tugie.

### A.      Fourteenth Amendment Due Process Claim

The plaintiff maintains that his due process rights have been violated by his allegedly wrongful STN score and classification as a sex offender.

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985).

The court construes the plaintiff's complaint as alleging deprivation of two distinct liberty interests without due process of law in violation of the Fourteenth Amendment: (1) a state-created liberty interest in not being classified as a sex offender; and (2) a liberty interest based on the stigmatizing effect of his classification as a sex offender. Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).

#### 1.      State-Created Liberty Interest

The plaintiff alleges that the decision to classify him as a sex offender was made in violation of his procedural and substantive due process rights. While procedural due process prohibits deprivations of life, liberty or property without constitutionally adequate procedures, substantive due process protects these substantive right "no matter the process employed by the State." *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017).[5] Compl., Doc. #1, at ¶¶ 20, 21, 32.

---

[5] "Substantive due process protects individuals against governmental action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense. *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). "It is not enough that the government act be 'incorrect or ill-advised'; it must be conscience-shocking." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (citation omitted). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." *Id.* at 275.

6

With respect to procedural due process, the plaintiff complains that he was not permitted to be represented by counsel,[6] present witnesses, cross examine accusers, or have an independent decisionmaker. *Id.* at ¶ 20. Additionally, he asserts Commissioner Cook did not provide him with a sufficient explanation of the reasons for the decision and did not adequately assess the credibility or reliability of hearsay statements. *Id.*

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84. The plaintiff has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 80-81 (2d Cir. 2000).

Here, the plaintiff alleges his sex offender status imposed the burdens of his ineligibility for transfer to a lower security facility and required participation in certain programs as a condition of his eligibility for RREC, parole, and community release. Compl., Doc. #1, at ¶ 19.

However, it is well-settled in Connecticut that a prisoner has no state or federally created liberty interest in his classification that would invoke due process protections because the Connecticut legislature has given state prison officials complete discretion to determine prisoner classifications that have an impact on eligibility to participate in rehabilitative programs. *Petipas v. Martin*, No. 3:17-CV-1912 (JAM), 2018 WL 5016997, at *5 (D. Conn. Oct. 15, 2018) (citing and quoting *Taylor v. Levesque*, 246 F. App'x. 772, 774 (2d Cir. 2007) ("prisoners generally

---

[6] To the extent the plaintiff claims a violation of the Sixth Amendment based on his lack of counsel at his classification hearing, this claim must fail. The Sixth Amendment is only applicable to criminal prosecutions. *See Sash v. Zenk,* 439 F.3d 61, 63 (2d Cir. 2006) ("Prison disciplinary hearings are not treated as 'criminal' for purposes of the Sixth Amendment."); *Gilliam v. Black*, No. 3:18CV1740 (SRU), 2019 WL 3716545, at *6 (D. Conn. Aug. 7, 2019) (Sixth Amendment applies only to criminal prosecution). The plaintiff has not alleged facts suggesting that the hearing was part of a criminal prosecution. Accordingly, this claim will be dismissed.

7

have no protected interest in  in classifications that impact their eligibility to participate in rehabilitative programs. . . . Moreover, Connecticut has not granted inmates, by regulation or statute, a protected interest in their security classification; the matter is committed to the discretion of the Commissioner of Corrections")); *see also Green v. Martin*, 224 F. Supp. 3d 154, 177 (D. Conn. 2016) (same); *Vega v. Rell*, 2012 WL 1298678, at *2 (D. Conn. 2012) (inmates have "no inherent liberty interest in receiving good time credit" and the Connecticut law that creates RREC does not create a liberty interest "because the commissioner is not required to make RREC available to all inmates; he has the discretion to make it available").

As the plaintiff cannot establish a protected state-created liberty interest in his risk-level classification, he cannot state a procedural or substantive due process deprivation based on the defendants' classification decision. This claim must be dismissed as not plausible under 28 U.S.C. 1915A(b)(1).

**2.     Stigma Plus Liberty Interest**

Holley alleges that his classification has wrongfully stigmatized him as a sex offender in violation of his procedural and substantive due process rights. Compl., Doc. #1, at ¶¶ 19, 20, 32.

The United States Supreme Court and the Second Circuit have recognized a protected liberty interest in being free from a false stigmatizing statement that alters a person's legal status or rights in a tangible manner. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980) (protectable liberty interest implicated by characterizing inmate as mentally ill and transferring him to mental hospital for mandatory behavior modification as a treatment for mental illness without due process); *Paul v. Davis*, 424 U.S. 693, 699-701 (1976) (Defamation by a state actor does not

amount to a deprivation of "liberty" or "property" within the meaning of the Fourteenth Amendment, unless accompanied by some interest other than mere loss of reputation."); *Balentine v. Tremblay*, 554 F. App'x 58, 60 (2d Cir. 2014) ("stigma-plus claim" includes "a stigmatizing statement plus a deprivation of a tangible interest without due process of law") (internal quotation marks and citation omitted); *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010) (concluding that "it continues to be the case that wrongfully classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest").

To prevail on a "stigma plus" claim, a plaintiff must allege two distinct elements: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false [the stigma], and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's rights or status [the plus]." *Id.* at 81 (internal quotation marks and citation omitted). The plus element must involve "specific and adverse action [by the state defendant] clearly restricting the plaintiff's liberty." *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (citations omitted). "This state-imposed alteration of status or burden must be 'in addition to the stigmatizing statement.'" *Vega*, 596 F.3d at 81 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38 (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

Here, the plaintiff asserts that the sexual offender classification has stigmatized him, damaged his reputation, and caused him to suffer material state-imposed burdens, including ineligibility to be transferred to a lower security facility and his required participation in certain

9

programs as a condition of eligibility for RREC, parole and community release. Compl., Doc. #1, at ¶ 19. The plaintiff asserts that the stigmatization and restrictions he experienced as a result of his sex offender classification have imposed an atypical and significant hardship on him as compared with the ordinary incidents of prison life experienced by Connecticut inmates who have not been classified as sex offenders. *Id.* He asserts that he has never been convicted of a sexual offense. *Id.* at ¶¶ 16, 19.

The facts underlying his criminal conviction based on the August 21, 2010 incident indicate that the plaintiff "began enticing his girlfriend to perform oral sex on him" while the child Z was asleep in the bedroom, and that the police observed "K and [plaintiff's] girlfriend lying naked on the bed, and Z lying at the foot of the same bed." *Holley*, 144 Conn. App. at 560-61. At this juncture, the court cannot determine whether the defendants had an appropriate basis to attribute an STN score of 3 to the plaintiff. Construed broadly, the facts alleged concerning the plaintiff's assignment of his STN score and his classification as a sexual offender satisfy the stigma and plus components of the Fourteenth Amendment stigma plus analysis. *See also Anthony A. v. Commissioner of Corr.*, 326 Conn. 668, 686 (2017) (holding that state habeas court had jurisdiction to entertain due process claim where inmate was classified as sex offender and required to undergo sex offender treatment or risk forfeiting parole eligibility, community release and good time credits). The court will permit the plaintiff's claims of due process violations based on his stigma-plus liberty interest to proceed beyond initial review for further development.

      **B.**      **Fourteenth Amendment Equal Protection Claim**

In his complaint, the plaintiff asserts that the stigmatization and restrictions he experienced as a result of his sex offender classification have imposed an atypical and significant hardship on him as compared with the ordinary incidents of prison life experienced by Connecticut inmates who have not been classified as sex offenders. Compl., Doc.#1, at ¶ 19.

The plaintiff alleges that his sexual offender classification renders him ineligible for a level reduction to permit him to be transferred to less restrictive facility without the approval of the Warden and Commissioner; and it requires him to participate in sex offender treatment as a condition of eligibility for RREC, parole, and community release. *Id.* at ¶ 36. At the same time, other offenders with convictions for kidnapping and or murder have been granted level reductions and are eligible for halfway house placements. *Id.* at ¶ 38.

The Equal Protection Clause requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). When a suspect classification is not at issue, the Equal Protection Clause requires that individuals are treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper

11

purpose—whether personal or otherwise—is all but certain." *See Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd.*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

The plaintiff does not allege a membership in a suspect classification because neither prisoners in general nor sex offenders in particular are a suspect class. *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012). In *Pettipas v. Martin*, this court permitted a similar equal protection claim to proceed beyond initial review for further consideration of the DOC risk classification policy as it applies to sex offenders, the specific manner in which the DOC subjects sex offenders to different risk classification than non-sex offenders (including non-sex offenders convicted for serious violent felony crimes), and grounds that support the policy and distinctions it draws as applied to the plaintiff in that case.  No. 3:17-CV-1912 (JAM), 2018 WL 5016997, at *5. I will allow this similar claim to proceed as well, without prejudice to the defendants' filing a motion to dismiss articulating a rational basis for any differential treatment.

C.     **Eighth Amendment**

The plaintiff alleges that his wrongful classification as a sex offender and the requirements that he partake in sex offender treatment violates the Eighth Amendment as cruel and unusual punishment.

A cognizable Eighth Amendment claim based on unconstitutional conditions of confinement, requires allegations of fact that establish "both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the official acted, or omitted to act with a 'sufficiently culpable state of mind,' meaning with a 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d

12

Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ). A condition is objectively serious if it deprives an inmate of "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation marks omitted) ). To meet the subjective component, allegations must include that prison officials knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and ... dr[e]w that inference." *Id.* at 185-86.

Here, the plaintiff has failed to allege that he was deprived of any basic human need. The requirement for the plaintiff to participate in a sex offender program and the possibility that he may not be released on parole or to a halfway house or a facility within the community do not constitute deprivations of a life necessity or basic human need. *Bohn v. Cook*, No. 3:19-CV-1144 (MPS), 2019 WL 5298152, at *5 (D. Conn. Oct. 18, 2019) (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (no constitutional right to be released on parole or to other conditional release from prison, prior to expiration of valid sentence)); *see also Wright v. Malloy*, No. 3:16-cv-1179 (SRU), 2016 WL 7115933, at *6 (D. Conn. Dec. 6, 2016) (ineligibility for parole or RREC "does not constitute cruel and unusual punishment in violation of Eighth Amendment"); *Blake v. Fischer*, No. 09-CV-266 (DNH/DRH), 2010 WL 2522198, at *9 (N.D.N.Y. Mar. 5, 2010) (inmate's "placement in sex offender training programs" did not amount to an infliction of cruel and unusual punishment"), *report and recommendation adopted*, No. 9:09-CV-266, 2010 WL 2521978 (N.D.N.Y. June 15, 2010). Because the plaintiff has not alleged that he was deprived of food, clothing, shelter, medical care, reasonable safety, or sanitary conditions, he has not stated a plausible serious deprivation to satisfy the objective

prong of the Eighth Amendment. Thus, the court must dismiss the plaintiff's Eighth Amendment claims as not plausible under 28 U.S.C. § 1915A(b)(1).

### D.     Double Jeopardy Clause

The plaintiff asserts that his classification as a sex offender violates his right to be free from double jeopardy. He asserts that he was acquitted for the sexual assault charge, but he is being punished for the same charge by the sex offender classification. Compl., Doc.# 1, at ¶ 41. The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, provides that a person shall not "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Clause protects against both a subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense." *United States v. Hernandez-Fundora*, 58 F.3d 802, 805 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied*, 515 U.S. 1127 (1995).

 The Double Jeopardy Clause is implicated only in proceedings that are "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528 (1975); *see United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548-49 (1943) (only "actions intended to authorize criminal punishment to vindicate public justice ... subject the defendant to 'jeopardy' within the constitutional meaning"); *see also United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362 (1984) ("Unless the [civil] forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable."). Prison disciplinary and classification proceedings are not criminal prosecutions. *See Wolff v. McDonnell*, 418 U.S 539, 556 (1974); *see also Hernandez-Fundora*, 58 F.3d at 806 (holding that even though sanction may have punitive component, sanction is not necessarily punishment

14

for double jeopardy purposes). Because a prisoner classification does not constitute a criminal proceeding, the plaintiff's sex offender classification does not implicate the Double Jeopardy Clause.

### E. Official Capacity Claims

The plaintiff has alleged claims for declaratory and injunctive relief. Thus, the court construes his complaint to assert these claims against the defendants in their official capacities.

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). Thus, the court must consider whether the plaintiff's requests for relief against the defendants in their official capacities are plausible and within this court's jurisdiction.

  1. Damages Against Defendants in their Official Capacities

Any claims for money damages against the defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Accordingly, to the extent that the plaintiff asserts such claims, they are dismissed.

  2. Requests for Injunctive and Declaratory Relief

15

In both his requests for declaratory and injunctive relief, the plaintiff seeks an order to require defendants to alter or change DOC's allegedly unconstitutional policies, which the court construes as a request for injunctive relief.[7] Because this request seeks prospective relief, it will be permitted to proceed for further development.

## CONCLUSION

In accordance with the foregoing analysis, the court enters the following orders:

(1) The case shall proceed on the plaintiff's claim of violation of his Fourteenth Amendment due process rights based on his stigma plus liberty interest and violation his Fourteenth Amendment equal protection rights against Commissioner Cook, Warden Stephen Faucher, Director of Classification and Population Management David Maiga, and Counselor Supervisor of Offender Classification and Population Management Elizabeth Tugie in their individual and official capacities.

All other claims are dismissed. If the plaintiff believes he can allege facts to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint within **thirty (30) days** from the date of this order.

(2) The clerk shall verify the current work addresses for Commissioner Cook, Warden Stephen Faucher, Director of Classification and Population Management David Maiga, and Counselor Supervisor of Offender Classification and Population Management Elizabeth Tugie with the DOC Office of Legal Affairs, mail a waiver of service of process request packet

---

[7]To the extent that the plaintiff seeks the court to declare that defendants have violated his constitutional rights, this request is barred because the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

containing the complaint and attachments to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall prepare a summons form and send an official capacity service packet, including the complaint and this Initial Review Order, on the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on Commissioner Cook, Warden Stephen Faucher, Director of Classification and Population Management David Maiga, and Counselor Supervisor of Offender Classification and Population Management Elizabeth Tugie in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and file a return of service within **thirty (30) days** from the date of this order.

(5) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(12) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L.

Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 14th day of May 2020, at Hartford, Connecticut.