# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALEXANDER HOLLEY,            :
      Plaintiff,                 :     CIVIL ACTION NO.
                                    :     3:20cv170 (MPS)
      v.                         :
                                    :
COMMISSIONER COOK, et al.,      :
      Defendants.              :

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Alexander Holley, is a sentenced inmate in the custody of the Department of Correction ("DOC") currently incarcerated at Brooklyn Correctional Institution. He filed this civil action under 42 U.S.C. § 1983 against DOC Commissioner Cook, Warden Stephen Faucher, Director of Classification and Population Management David Maiga, and Counselor Supervisor of Offender Classification and Population Management Elizabeth Tugie in their official and individual capacities asserting that they violated his constitutional rights by assigning him an elevated sexual treatment needs ("STN") score based on conduct for which he had been acquitted in criminal trial. The Court permitted Holley to proceed on his federal claims for violation of his Fourteenth Amendment due process and equal protection rights. IRO (ECF No. 9 at 16); (ECF No. 32 at 9).

Defendants have filed a motion for summary judgment on both claims. Mot. for Summ. Judg. (ECF No. 61). Holley has filed an opposition brief.  Pl.'s Opp. (ECF No. 69). For the reasons set forth below,  the Court GRANTS the motion for summary judgment.

## I.     FACTS[1]

The Court takes judicial notice that as a result of events that occurred on August 21, 2010, "[t]he state, in a long form information filed on August 16, 2011, charged [Holley] with two counts of kidnapping in the first degree with a firearm in violation of General Statutes § 53a–92a, one count of aggravated sexual assault in the first degree in violation of General Statutes § 53a–70a (a), and one count of risk of injury to a child in violation of [General Statutes] § 53–21. The jury found [Holley] guilty of risk of injury to a child and not guilty on each of the remaining charges." *State v. Holley*, 144 Conn. App. 558, 562 (2013). The court sentenced Holley to a total effective term of fifteen months imprisonment.  *Id.*

At the time relevant to this action, Rollin Cook was the DOC Commissioner; Stephen Faucher was the Warden at Brooklyn Correctional Institution; and Elizabeth Tugie and David Maiga worked, respectively, as counselor supervisor ("CS") and Director for the DOC Offender Classification and Population Management ("OCPM") unit. Defs.' 56(a)1 at ¶¶ 1-3.

OCPM coordinates overall offender classification efforts and is responsible for the

---

[1] This factual background reflects the Court's review of the Complaint (ECF No. 1), the Defendant's Local Rule 56(a)1 Statement ("Defs.' 56(a)1") (ECF No. 61-2) and attached exhibits (ECF Nos. 61-4 to 61-15, 62 (sealed)); and Holley's Local Rule 56(a)2 and 3 Statements. (ECF Nos. 69-3 to 69-4) with exhibits attached thereto (ECF No. 69-5) and his affidavit (ECF No.69-2). The Court also takes judicial notice of certain averments made by CS Tugie in her declaration submitted in support of Defendants' memorandum in opposition to Holley's motion for injunctive relief (ECF No. 51-5), which is part of the public record in this case. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (The court may "take judicial notice of relevant matters of public record.").

The Defendants have informed Holley of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. Notice (ECF No. 61-3). Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

assignment of all offenders to locations within the DOC; it is responsible for  assessment of adult, male offenders sentenced to greater than two years of confinement. *Id.* at ¶¶ 4-5.

Every inmate committed to the custody of the DOC undergoes a standardized classification process, which takes into account two broad categories of factors, "risks" and "needs." *Id.* at ¶ 9. Each risk factor is assigned a score of 1 through 5 to arrive at an "Overall Risk Score" between 1 and 5. *Id.* The Overall Risk Score determines the minimum-security level correctional institution at which an inmate may be housed. *Id.* at ¶ 10. Each inmate receives an individualized classification determination upon entrance to the DOC. *Id.* at ¶ 11.

The risk and need score each includes seven factors. *Id.* at ¶¶ 12-13. The risk score assessment considers the inmate's escape profile, the severity or violence of his current offense, whether there is a history of violence, the length of the inmate's sentence, the presence of any pending charges and/or detainers, and whether or not the inmate has been found to have a membership in a "Security Risk Group" or gang. *Id.* at ¶ 12.[2] The need score assessment considers the inmate's medical health, mental health, education, substance abuse treatment, vocational/work skill, sex treatment, and "family/residence/community resource." *Id.* at ¶ 13.

DOC uses information beyond conviction history to determine both security risk and treatment scores. *Id.* at ¶ 14.[3] Sex treatment needs ("STN") scores indicate that an inmate has a record or known history of problem sexual behavior. *Id*. at ¶ 15. This needs score focuses on the level of sexual re-offense risk and addresses program intervention needs. *Id.*

---

[2] The Court recognizes that this list includes only six factors.

[3] The DOC appears to treat "treatment score" as a synonym for "needs score."

Information used to help develop the STN score includes information derived from police reports, DOC records, victim statements, and other documents. *Id.* at ¶ 16. Such information may include *nolled*, acquitted, dismissed, or withdrawn information related to a prior conviction. *Id.* Maiga's declaration attaches a portion of the DOC Objective Classification Manual Rev. 4/12, which provides:

> No stand-alone charge for which the offender has been found not guilty or the charge nolled, or dismissed, shall be used to determine any risk or needs score. If a charge for which the offender was found not guilty or the charge nolled, dismissed or resulted in an acquittal was included as one of multiple charges leading to a conviction as a result of a trial, plea bargain and/or guilty plea, information as to the charges not resulting in a conviction on at least one of the multiple charges may be used to determine any risk or needs score. [4]

Maiga dec. at ¶ 15, pp. 11-12 (ECF No. 61-10); Pl.'s ex. J, Classification Manual p. 4 at 130 (ECF No. 69-5).[5] If non-conviction information is used to assign an STN score, then inmates are provided with a hearing before this classification is made. Defs.' 56(a)1 at ¶ 17.

---

[4] The attached Classification Manual states further:

> **Information from charges which were nolled, acquitted, dismissed, withdrawn or dropped,** which is part of a crime resulting in a conviction, may be used to determine needs scores based upon the description of the crime from police reports, Pre-Sentence Investigations (PSI's), or other reliable investigative reports.

> **Information from charges which were nolled, acquitted, dismissed, withdrawn or dropped,** which is from a stand-alone offense (crime in which no conviction was obtained) cannot be used to determine risk or needs scores.

> **If an offense that an inmate is sentenced for was substituted for another charge,** information regarding the original charge may be used in determining risk and needs scores.

Maiga dec., at 12 (ECF No. 61-10); Pl.'s ex. J at 130 (ECF No. 69-5).

[5] Holley has also submitted Maiga's and Tugie's responses to Holley's interrogatories that rely upon the 2012 Classification Manual. *See* Pl.'s ex. L at 145,  147, 148, 152, 154, 155, 158 (ECF No. 69-5).

4

On January 11, 2017, Holley received a C10 form entitled Notification of Hearing for Sexual Treatment Need Score Based on Non-Conviction Information. *Id.* at ¶ 19.[6]

The C10 form noted that an STN score greater than one will be assigned if an offender has a record or known history of problematic sexual behavior. Defs.' 56(a)1 at ¶ 20. It also stated that "[n]olled, acquitted, dismissed, dropped or withdrawn information which is part of a crime resulting in a conviction may be used to determine the need scores when the description of the crime from police reports, PSIs, or other reliable investigative reports contain information of problematic sexual behavior." *Id.* The form indicated that the charge and information relied upon included his October 7, 2011 conviction "on Docket Number NNH-CR10-0108967-T for [§] 53-21 Risk of Injury [to a minor] (sexual in nature)," and that based on the circumstances of the crime and "supporting mitigating factors" noted in the New Haven Police Report, an STN score was warranted. *Id.* at ¶ 21. Holley was aware of the contents and substance of the allegations contained within the New Haven Police Report referenced in the STN hearing notification form. *Id*. at ¶ 22. Finally, the form notified Holley that a hearing would be held on January 17, 2017, at 10:00 AM, to consider whether he should receive a discretionary STN score greater than one. *Id.* at ¶¶ 20, 23.

On January 18, 2017, Holley received an STN hearing and signed a C11 form entitled Hearing for Sexual Treatment Need Score Based on Non-Conviction Information. *Id.* at ¶ 24.[7] At

---

[6] Holley represents that he signed this form due to coercion from threats of disciplinary action and loss of "good time" credit. Pl.'s Rule 56(a)2 at ¶ 19; Pl.'s aff. at ¶ 29 (ECF No. 69-2).

[7] Holley asserts that he signed the C11 form unwillingly due to his fear of disciplinary action. Pl.'s Rule 56(a)2 at ¶ 24.

the hearing, Holley provided a statement and denied the allegations in the police report; he indicated that he disagreed with the assignment of an STN score because he was not convicted of sexual assault or a sexual offense. Defs.' Rule 56(a)1 at ¶ 25. The hearing officer indicated on the C11 form that the October 7, 2011 conviction and documentation confirmed that the offense was sexual in nature and supported an STN score. *Id.* at ¶ 26.

Holley was assigned an STN score of 3VN. *Id.* at ¶ 28.[8]

The C11 form advised Holley of his right to appeal his STN score in accordance with Administrative Directive 9.6. *Id.* at ¶ 29. Holley subsequently filed an appeal of his STN score designation, which was received by OCPM on January 30, 2017. *Id.* at ¶ 30. In his appeal, Holley asserted a denial of his due process rights due to the hearing officer's reliance on the Police Report underlying his conviction for risk of injury. *Id.* at ¶ 31. He claimed that reliance on the police report was improper because he was convicted not of sexual assault but only of risk of injury based on non-sexual conduct. *Id.*

On March 6, 2017, CS Tugie denied Holley's appeal, noting that *nolled*, acquitted, dismissed, or withdrawn information, which is part of another crime, may be used to determine need scores. *Id.* at ¶ 32. In considering Holley's appeal, Tugie reviewed the New Haven Police Report underlying Holley's conviction for risk of injury and his acquitted charges. *Id.* at ¶ 33. The Police Report contained statements by three individuals, namely a primary victim, her friend, and Holley's girlfriend. *Id.* at ¶ 34. In the police report, the primary victim stated that she had gone to Holley's home with a male friend and her two-year-old son to braid the hair of

---

[8] Holley's designated STN score is 3; the V denotes that the information used to classify him was documented in the record; and N denotes that his score was based on non-conviction information. *Id.*

Holley's girlfriend. *Id.* The victim stated that Holley had placed her son on a bed in Holley's bedroom to watch cartoons while she braided Holley's girlfriend's hair in the same room. *Id.* The victim indicated that Holley drank alcohol and smoked crack; brandished a gun; forced his girlfriend to strip her clothes off and give him oral sex; forced the victim to strip her clothes off, accosted her (the victim), and forced his girlfriend to give her (the victim) oral sex; and later performed oral sex on her (the victim). *Id.* She represented that Holley had engaged in this activity while her two-year-old son was asleep on the same bed. *Id.* Holley's girlfriend denied that she had assisted Holley in the sexual assault of the victim and indicated that the sexual encounter between the victim and Holley was consensual. *Id.*

The victim's friend's statement indicated that Holley became aggressive when he expressed that he wanted to have a threesome with his girlfriend and the victim and that he was in possession of gun. *Id.* The victim's friend stated that he left the residence to call for help; found the doors to Holley's home locked upon his return; banged on the windows and heard a female voice say to open the door and a male voice saying no. *Id.* The friend represented that he flagged down a police officer, who ultimately entered the home and arrested Holley. *Id.*

The Police Report also stated that officers had to force their way into Holley's bedroom because Holley was holding the door shut. *Id.* The Police Report indicated that upon their entry, the police discovered Holley partially naked, the victim and his girlfriend fully naked, and the two-year-old on the edge of the bed. *Id.* The Report describes Holley's physical resistance to his arrest prior to being subdued by officers. *Id.* The officers reported that the victim had represented that Holley had threatened to shoot her, her child, and his girlfriend with a handgun if they did not do as he instructed. *Id.*

7

Holley was thereafter charged with sexual assault, conspiracy to commit sexual assault, risk of injury to a minor, threatening, kidnapping, conspiracy to commit kidnapping, carrying or brandishing a facsimile firearm, unlawful restraint, and interfering with an officer. *Id. See* New Haven Case Incident Report (ECF No. 62 at 16-17) (sealed).

After reviewing the police report, CS Tugie concluded that there was sufficient information to warrant the STN score of 3VN that had been assigned to Holley. *Id.* at ¶ 35. She denied the appeal on the grounds that there was no violation of DOC procedures and that the consideration of the records was appropriate to assess his risk level and treatment needs. *Id.*

Holley's STN score of 3VN resulted in a required referral for evaluation by a mental health clinician to determine the appropriate programs for Holley. *Id.* at ¶ 36. Specific program participation requirements are determined by the mental health clinician following an inmate's evaluation. *Id.* at ¶ 37. Custody staff do not make the ultimate decision regarding the inmate's programming. *Id.*

On April 1, 2020, a mental health provider completed an evaluation of Holley and determined that he was a candidate for sexual treatment programming. *Id.* at ¶ 38. DOC's sexual treatment programs are designed to prevent an inmate's relapse into problematic sexual behavior following his or her release from prison, with the overall goal of promoting successful reintegration into society and preventing recidivism and return to prison. *Id.* at ¶ 39.

An inmate who refuses to participate in the sexual treatment prescribed for him may face the issuance of a disciplinary report. Cruz dec., ex. K at ¶ 15 (ECF No. 61-14). As Tugie explained in her declaration submitted in support of Defendants' opposition to Holley's motion for injunctive relief, Holley's refusal to participate in the sexual treatment program could

8

subject him to a class A disciplinary ticket for refusal to complete a requirement of his

Offender Accountability Plan. Tugie dec. at ¶ 33 (ECF No. 51-5); *see* Pl.'s ex. B, Code of

Penal Discipline (ECF No. 69-5 at 10). If Holley were found guilty, such a ticket could result in

his loss of Risk Reduction Earned Credits ("RREC") and his inability to accrue credits during

his refusal to participate in the programming. Tugie dec. at ¶ 33 (ECF No. 51-5)*.*

An STN score does not indicate that the inmate is a sex offender or is required to register

as such. Tugie dec. at ¶ 34 (ECF No. 61-11).[9] There are inmates with an STN score of two or

higher who are not registered sex offenders and are not serving sentences for sexually-based

offenses. *Id.* at ¶ 35. Holley's STN score itself does not render him ineligible for RREC or

ineligible for parole or community release. *Id.* at ¶ 37.

On June 18, 2019, the Commissioner's Office received a letter from Holley

regarding his STN score. *Id.* at ¶ 45. This letter was forwarded to OCPM for review and

response. *Id*. In this letter, Holley complained about his STN score and indicated that he had

documentation to demonstrate that he did not require an STN score of three. *Id.* at ¶ 46. With his

letter, Holley included his Offender Accountability Plan, documentation related to his 2017 STN

hearing and appeal, a letter from his attorney relating the underlying risk of injury conviction,

documentation from the Board of Pardons and Parole, an inmate request he had submitted to

Warden Martin in 2018, and a copy of a Connecticut Appellate Court decision related to an

appeal of his risk of injury conviction. *Id.* at ¶ 47.

When OCPM received Holley's letter from the Commissioner's Office, CS Tugie

---

[9] Holley maintains that the STN score stigmatizes an inmate who has not committed a sexual offense by treating the inmate as a sexual offender. Pl.'s Rule 56(a)2 at ¶ 41.

undertook a review of his correspondence and the underlying documentation related to his STN hearing and score designation. *Id.* at ¶ 48. Tugie determined there was no basis to alter Holley's STN score, concluding that the documentation considered at the STN hearing supported the score as designated. *Id*. at ¶ 49. She relayed this finding to Holley in a response dated July 24, 2019. *Id.* The documentation Holley had provided with his letter to the Commissioner's office did not contain any additional information that Holley had not shared at his STN hearing. *Id.* at ¶ 50.

Former Commissioner Cook avers that he had no involvement in any of OCPM's inmate classification reviews or decisions, including any related to inmate STN scores and he has no recollection of Holley or of his bringing any of his issues or concerns regarding his STN score to Cook's attention while Commissioner. *Id.* at ¶¶ 60, 61.

Faucher avers that he was not personally involved in any reviews or assignments of inmate STN scores.  According to him, he was aware of only one communication sent to the warden's office by Holley during his time as warden: an inmate request that sought a "favorable recommendation" from Warden Faucher. *Id.* at ¶ 68. This communication was received on July 31, 2020. That same day, Faucher responded by asking what Holley was referring to and for what did Holley wish to have a "favorable recommendation." *Id.* Faucher recalls no subsequent communication from Holley. *Id.*

## II.    LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule

10

56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107,

113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at

113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In reviewing

the summary judgment record, a court must "construe the facts in the light most favorable to the

non-moving party and must resolve all ambiguities and draw all reasonable inferences against

the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).   The

moving party bears the initial burden of informing the court of the basis for its motion and

identifying the admissible evidence it believes demonstrates the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets

this burden, the nonmoving party must set forth specific facts showing that there is a genuine

issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory

allegations or unsubstantiated speculation but must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health

Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). Although the court

is required to read a self-represented "party's papers liberally and interpret them to raise the

strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015),

"unsupported allegations do not create a material issue of fact" and do not overcome a properly

supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.

2000).

## III.    DISCUSSION

Defendants argue that the undisputed facts show that they did not violate Holley's Fourteenth Amendment due process or equal protection rights; in the alternative, they assert they are entitled to the shield of qualified immunity from damages. Defs.' Mem. at 1. Holley counters that he has demonstrated violations of his stigma-plus due process and equal protection rights under the Fourteenth Amendment or at least raised a genuine dispute about such violations that warrant a trial. Pl.'s Opp. at 1.  As discussed below, the Court concludes that Holley's claims for injunctive relief are moot, his equal protection and substantive due process claims fail on the existing record, and the doctrine of qualified immunity defeats his claim for damages for any violation of his procedural due process rights.  In light of this conclusion, I need not and do not address the defendants' arguments about Cook's and Faucher's lack of personal involvement in the alleged violations.

### A.    Injunctive Relief

The Court's initial review order permitted Holley to proceed on his official capacity claims for injunctive relief against the defendants. Initial Review Order (ECF No. 15). In his complaint, Holley sought an order to require defendants to alter or change DOC's allegedly unconstitutional policies regarding his classification as a sex offender. Compl. at 26. A recent ruling by the Connecticut Supreme Court in another case, together with subsequent action in Holley's own state court habeas case, however, have mooted any need for such relief.  In *Anthony A. v. Comm'r of Correction*, No. 20499, 2021 WL 2492759, at *14 (Conn. June 17, 2021), the Connecticut Supreme Court held that the DOC had violated both the Due Process Clause of the Fourteenth Amendment and Article First, section 9, of the Connecticut Constitution by failing to afford adequate process to an inmate who received an elevated STN

12

score on the basis of nonconviction information. *See*. In a notice filed on November 3, 2021, Holley submitted an order dated October 28, 2021 from his habeas case (TSR-CV-18-4009695-S), in which the Connecticut Superior Court mandated that, in the wake of *Anthony A.*, Holley's STN score be vacated, that he be provided with a new classification hearing consistent with the requirements announced in *Anthony A*, and that his overall security classification level be reassessed "as soon as possible in light of his new zero classification score pending a hearing." Notice (ECF No. 71 at 3). As Holley is no longer subject to the stigma or associated burdens from his STN score assignment, he cannot seek relief for an ongoing Fourteenth Amendment violation on the basis of his STN score. The action taken by the state habeas court has already afforded Holley any prospective relief possible for violation of his constitutional rights stemming from the assignment of his STN score.  So his claim seeking an injunction against the defendants in their official capacities is moot. *See C. v. Middletown Bd. of Educ.*, No. 3:20-CV-00512 (KAD), 2021 WL 4460252, at *4 (D. Conn. Sept. 29, 2021) ("Mootness can derive from circumstances which render it impossible for the Court to provide any redress for the claimed injury") (citing *United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007)).[10] Thus, the Court must enter summary judgment on Holley's official capacity claims for prospective relief.

.   **B.   Damages Claims**

      **1.   Stigma-Plus Liberty Interest**

---

[10] Even if the claims for prospective relief were not moot, they would fail under the Eleventh Amendment, because they no longer fit the exception to Eleventh Amendment immunity recognized in *Ex Parte Young*. 209 U.S. 123 (1908) for claims to enjoin state officials' *continuing* violations of federal law. *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005).

The Court permitted Holley's Fourteenth Amendment stigma-plus due process claims to proceed beyond initial review because a misclassification of an inmate as a sex offender "may have a stigmatizing effect which implicates a constitutional liberty interest." IRO (ECF No. at 9 at 8-10). *See Vega v. Lantz*, 596 F.3d 77, 81–82 (2d Cir. 2010).

A "stigma-plus" claim is a species of claim for the deprivation of a liberty interest without due process.  To prevail on a "stigma-plus" liberty interest claim, a plaintiff must allege two distinct elements: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false [the stigma], and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status rights [the plus]." *Id.* at 81 (internal quotation marks and citation omitted). The "plus" element must involve "specific and adverse action [by the state defendant] clearly restricting the plaintiff's liberty." *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (citations omitted). "This state-imposed alteration of status or burden must be 'in addition to the stigmatizing statement.'" *Vega*, 596 F.3d at 81 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38 (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)). For purposes of this ruling, the Court assumes that Holley has established a stigma-plus liberty interest in not being assigned a STN score based on nonconviction information and subjected to the state-imposed burdens of required participation in sex offender programming and disciplinary consequences for the refusal to participate. *See* Cruz declar., ex. K at ¶ 15 (ECF No. 61-14); Tugie declar. at ¶ 33 (ECF No. 51-5).

**a.  Procedural Due Process**

If the plaintiff can demonstrate a liberty interest, he or she also must demonstrate that the liberty interest was deprived without adequate process to establish a procedural due process violation. *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006). "Stated differently, the availability of adequate process defeats a stigma-plus claim." *Id.* Thus, to prevail on his claim, Holley must establish that the procedures followed by the State were not constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Balentine v. Tremblay*, 554 Fed Appx. 58, 61 (2d Cir. Feb. 11, 2014) ("[T]he adequacy of the process by which Balentine was placed on the online registry is an inquiry in the doctrinal analysis distinct from the existence of a 'stigma-plus' liberty or property right.").

The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For a disciplinary hearing, an inmate is entitled to the protections set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974). *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (inmates are entitled to "certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship); *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999) (per curiam) (concluding that discipline resulting in atypical confinement may not be imposed without procedures enumerated in *Wolff*). "The *Wolff* Court, while holding that full adversary proceedings are not required for disciplinary deprivations of liberty in the prison setting, required written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence." *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001) (footnote omitted) . Further, "due process requires that there be some evidence to support the findings made in the disciplinary hearing." *Zavaro v.*

*Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (internal quotation marks omitted).   The "some

evidence" standard, however, "'is extremely tolerant'" and can be satisfied based on

"'*any* evidence in the record'" supporting the disciplinary ruling. *Girard v. Chuttey*, 826 F.

App'x 41, 46 (2d Cir. 2020) (quoting *Sira*, 380 F.3d at 69) .

By contrast, for a hearing with an administrative purpose, an inmate is entitled only to

"some notice of the charges against him and an opportunity to present his views [either orally or

in writing] to the prison official charged with deciding" the matter as set forth in *Hewitt v.*

*Helms,* 459 U.S. 460 (1983).[11] In *Wilkinson v. Austin*, 545 U.S. 209, 214 (2005), the Supreme

Court determined that the process endorsed in *Hewitt* was sufficient before prisoners could be

placed indefinitely for non-disciplinary reasons at a high-security "Supermax" prison. The Court

explained that the more "formal, adversary-type procedures" of *Wolff* are appropriate to protect

liberty interests such as an individual's removal from "free society for a specific parole

violation" or revocation of "good-time credits for specific, serious misbehavior[,]" while

*Hewitt*'s informal, non-adversary procedures apply for proceedings where "the inquiry draws

more on the experience of prison administrators," and the state interest implicates prison safety

and security. *Id.* at 228-229.

This Court has previously held that an inmate is entitled to the process due under *Hewitt*

in connection with his STN score hearing. *Knight v. Semple*, No. 3:18-CV-703 (SRU), 2020 WL

1914927, *4-5 (D. Conn. April 20, 2020), (concluding that inmate should be afforded "informal,

---

[11] In *Hewitt*, the Supreme Court considered what process should be afforded an inmate who had
been placed in administrative segregation pending an investigation into a disciplinary charge. *Id.* at 474.
The Court explained that it was appropriate to place an inmate in administrative segregation who
"represents a security threat" or to "complet[e] ... an investigation into misconduct charges." *Id.* at 476.

nonadversary procedures" under *Hewitt* for STN score assignment). In *Knight*, the Court rejected the plaintiff's contention that his hearing was disciplinary in nature and relied upon the defendants' evidence that the STN score assignment draws "more on the experience of prison administrators" and that the state's interest at issue implicates "the safety of other inmates and prison personnel." *Id.* at *5.

*Knight*, however, conflicts with decisions from several other Circuits. *See, e.g., Renchenski v. Williams*, 622 F.3d 315, 331 (3d Cir. 2010) (finding inmate designated as a sex offender and required to participate in sex therapy or suffer disciplinary custody and privilege loss was entitled to protections outlined in *Wolff*) *Gwinn* v. *Awmiller*, 354 F.3d 1211, 1218–19 (10th Cir. 2004) (because classification as sex offender reduced rate at which inmate could earn good time credits, inmate was entitled to procedural protections in *Wolff*); *Neal* v. *Shimoda*, 131 F.3d 818, 827-831 (9th Cir. 1997) (because classification of inmate as sex offender and mandatory successful completion of sex offender treatment program as precondition for parole eligibility implicate protected liberty interest, inmate is entitled to procedural protections in *Wolff*); [12] *see also Anthony A.,* No. 20499, 2021 WL 2492759, at *9 (Conn. June 17, 2021)(requiring application of *Wolff* procedures to assignment of STN score based on non-conviction information and noting "[f]ederal courts uniformly have held that the due process requirements in *Wolff* apply to proceedings to determine whether an inmate who has not

---

[12] In the context of a parolee-plaintiff's interest in being free from for sex offender registry and therapy, the Fifth Circuit held that the parolee's liberty interest was greater than an inmate's interest in good-time credits and held that the process due for a parolee was "at a minimum, the same process due to inmates under *Wolff." Meza v. Livingston*, 607 F.3d 392, 410 (5th Cir. 2010), *decision clarified on denial of reh'g,* 2010 WL 6511727 (5th Cir. Oct. 19, 2010).

previously been convicted of a sex offense may be classified as a sex offender for purposes of rehabilitation, treatment, or parole."). In holding that the procedural protections of *Wolff* apply to a sexual offender classification of an inmate who has not convicted of a sexual offense, the Third, Ninth and Tenth Circuits noted that the classification of the inmate either directly resulted in a punitive sanction such as reduced good time credit or required participation in sex treatment programs with the threat of ineligibility for parole or disciplinary measures for noncompliance. In this instance, Holley's assignment of an STN score meant that he faced a class A disciplinary ticket for a refusal to participate in sex treatment programming and the resulting consequence of RREC loss and an inability to accrue credits during his refusal. *See* Tugie declar. at ¶ 33 (ECF No. 51-5).

Holley's complaint asserts that his due process rights were violated because he, *inter alia*, was not permitted to present live testimony from witnesses; he was not provided with an opportunity to cross-examine his accusers; his hearing was not administered by an independent decision maker; and he was not provided with a sufficient explanation of the reasons for the decision. Compl. (ECF No. 1 at ¶ 20).The record shows that Holley received at least procedural protections satisfying the *Hewitt* standard. He received notice on January 11, 2017 that he was subject to consideration for an STN score at a hearing, and that "[n]olled, acquitted, dismissed, dropped or withdrawn information which is part of a crime resulting in a conviction may be used to determine the need scores when the description of the crime from police reports, PSI's, or other reliable investigative reports contain[s]information of problematic sexual behavior." *See* Defs.' Local Rule 56(a)1 at ¶¶ 20-22. The January 11 notice specifically informed him that prison officials intended to rely on the New Haven Police Report in making the determination of

18

an STN score. *Id.* at ¶ 21. In addition, the STN hearing form reflects that Holley had an opportunity to express his views in  a statement, and that the hearing officer indicated that Holley warranted an STN score of 3VN based on his 2011 conviction and documentation. *See id.* at ¶¶ 25-26. Holley, who was advised of his appeal rights, filed an appeal, which was denied after review. *See id.*at ¶¶ 29-35.

At present, however, it remains unclear within the Second Circuit whether Holley was entitled to the more demanding procedural requirements under *Wolff*. Even if *Wolff* does apply in this case, however, the Court need not resolve whether Holley received all of the procedures under *Wolff* because the defendants are entitled to qualified immunity. "The doctrine of qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted).  A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Torcivia v. Suffolk Cty., New York*, No. 19-4167, 2021 WL 5183543, at \*17 (2d Cir. Nov. 9, 2021) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)).  Even when a right is clearly established, qualified immunity protects government officials when it was objectively reasonable for them to believe that their conduct in the particular factual context at issue did not violate that clearly established right. *See Manganiello v. City of New York,* 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable

officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).

The Court's research identified no Second Circuit or Supreme Court precedent that "clearly established" Holley was entitled to the procedural protections of *Wolff* prior to his STN score assignment based on non-conviction information for sex treatment purposes. Thus, the defendants did not violate a clearly established right, and it was objectively reasonable for the defendants to believe that the procedures afforded to Holley for assigning his STN score based on non-conviction information did not violate his Fourteenth Amendment procedural due process rights. Thus, the Court will grant the motion for summary judgment on his Fourteenth Amendment procedural due process claim against the defendants in their individual capacities.[13]

---

[13] In *Vega*, the Second Circuit held that DOC's consideration of acquitted conduct under the relevant classification manual did not support a liberty interest. *Vega*, 596 F.3d at 83. As Holley points out, *Vega* went on to note that "the record strongly indicate[d] that Vega's SOTN score would be a 3 even if he had never been charged with, and acquitted of, sexual assault in the first degree" because he was convicted of "Assault in the First Degree ... on the basis of the mutilation and amputation of his minor victim's nipple." *Id.* Holley's opposition argues that his case is distinguishable from *Vega* because there was no underlying sexual conduct for his conviction of risk to an injury to a minor; he submits a letter from his criminal defense attorney stating that the risk of injury conviction was based on his resisting arrest in close proximity to a minor. *See* Pl.'s Opp. at 9; ECF No. 69-5 at 3. However, *Vega* held that a Fourteenth Amendment liberty interest did not arise from the DOC's reviewing information related to charges on which an inmate was acquitted as permitted under its own regulation. The DOC Classification Manual in the record provides: "If a charge for which the offender was found not guilty or the charge nolled, dismissed or resulted in an acquittal was included as one of multiple charges leading to a conviction as a result of a trial, plea bargain and/or guilty plea, information as to the charges not resulting in a conviction on at least one of the multiple charges may be used to determine any risk or needs score." Maiga declar.,Classification Manual (ECF No. 61-10 at 12). A jury acquitted Holley of the charges of kidnapping and aggravated sexual assault but convicted him of risk of injury to a child. *Holley*, 144 Conn. App. at 562. The Classification Manual permits consideration of Holley's non-conviction information –in this case coming from a police report – related to the charges in his state trial on which he was acquitted, because he was convicted in the same of trial of risk of injury to a minor.  As discussed in the text, as long as prison officials afford him adequate process to ensure the accuracy of an STN score that is based on information not related to a charge on which he was convicted, they do not violate his constitutional rights.  Finally, although he suggests that the defendants misinterpreted prison regulations, a prison official's failure to comply with prison regulations or administrative directives "does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted).

b.      **Substantive Due Process**

Holley also claims that Defendants violated his substantive due process rights by wrongfully classifying him as a Level-Three sex offender on the basis of non-conviction information and requiring his participation in "embarrassing programs." Pl.'s Opp. at 6-12. This claim is not plausible and must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).[14]

"The doctrine of substantive due process protects the individual against certain government actions regardless of the fairness of the procedures used to implement them," *McClary v. O'Hare*, 786 F.2d 83, 88 (2d Cir. 1986) (internal quotation marks and citations omitted), but the scope of the doctrine "is very limited," *Doe v. U.S. Merchant Marine Acad.*, 307 F. Supp. 3d 121, 156 (E.D.N.Y. 2018). A successful substantive due process claim requires that the plaintiff show "that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks and citations omitted).

In this case, Holley's STN assignment based on non-conviction information cannot be considered shocking. *See Vega*, 596 F.3d at 83; *Knight*, 2020 WL 1914927 at *4-*5. Moreover, as the Second Circuit observed, a "stigma-plus" claim is considered "a species within the phylum of procedural due process claims." *Segal*, 459 F.3d at 213; *see also Leach v. City of Newburgh*, No. 17-CV-5363 (CS), 2018 WL 6411360, at *7 (S.D.N.Y. Dec. 6, 2018) ("Because what is alleged to be so shocking about Defendants' conduct is the alleged deprivation of Lt. Leach's property or liberty interest without procedural due process, his substantive due process claim

---

[14] Defendants have not moved to dismiss his claim of substantive due process violation. Under section 1915(e)(2)(B)(i)-(iii), however, the Court may dismiss at any time claims that are not plausible or that are frivolous.

21

must fail."); *Piccoli v. Yonkers Bd. of Educ.*, No. 08-CV-8344, 2009 WL 4794130, at *6 & n.5 (S.D.N.Y. Dec. 11, 2009) (substantive due process claim may be inappropriate where it is duplicative of "stigma-plus" procedural due process clam). Because Holley's stigma-plus claim is governed by procedural due process standards, the Court dismisses his substantive due process claim as not plausible.

### 2.    Equal Protection

Holley asserts that his STN score renders him ineligible for a level reduction to permit him to be transferred to a less restrictive facility without the approval of the Warden and Commissioner; and it requires him to participate in sex offender treatment as a condition of eligibility for RREC, parole, and community release. Compl. at ¶ 36. He maintains other offenders with convictions for kidnapping and murder have been granted level reductions and are eligible for halfway house placements. *Id.* at ¶ 38.

The Fourteenth Amendment Equal Protection Clause does not mandate identical treatment for each individual but "is essentially a direction that all persons similarly situated should be treated alike*." City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'*"* *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff must demonstrate evidence of "purposeful

22

discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

Thus, to prevail on an equal protection claim, a plaintiff must show that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right. *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted). When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). A high level of similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain*." See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

For purposes of rational-basis review, the Constitution "does not demand ... that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale

supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). A court must uphold a classification "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 92 (2d Cir. 2017) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). *See Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (applying these principles of rational basis review to a class-of-one claim).

Holley has not alleged membership in a suspect class, and prisoners in general are not a suspect class. *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012). Accordingly, Holley must proceed as a "class of one."[15]

Holley has failed to point to any evidence that would support an inference that no rational basis exists for Defendants' decision to assign him an STN score based on non-conviction information. And it is not difficult to imagine such a basis: Restricting elevated STN scores to inmates with sex-based convictions would prevent the DOC from properly managing within its own facilities inmates convicted of non-sex-based offense but as to whom there may be reliable, non-conviction evidence of problematic sexual histories – for example, police reports, presentence reports, or prison disciplinary reports detailing sexual misconduct against fellow

---

[15] A plaintiff who is not a member of a suspect class may also bring an equal protection claim under a theory of selective enforcement where a defendant's conduct was motivated by malice toward the plaintiff. *See Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (noting selective enforcement and "class of one" provide distinct pathways for non-class based equal protection claims). As the record fails to suggest that Defendants' conduct was motivated by malice toward Holley, the Court analyzes Holley's equal protection claim under a "class of one" theory. In any event, Holley has not satisfied the standard for showing selective enforcement, which requires him to show that he was treated differently from another similarly situated comparator. *See id.; Sanchez v. Shanley*, No. 920CV0648GTSML, 2021 WL 365912, at *4 (N.D.N.Y. Feb. 3, 2021).

inmates and DOC staff.   In any event, Holley makes no attempt to show that Defendants treated him differently than any other similarly-situated individuals or comparators. *See* Pl.'s Opp. at 13. Although Holley has alleged that the DOC treated him differently than other inmates who committed murder or kidnapping, he has not shown there was non-conviction information about sexual misconduct regarding those inmates that suggested they posed a risk to other inmates or staff.   They are thus not similarly situated to him.

No reasonable juror could find Holley's equal protection rights were violated based on the present record. *See Bishop v. Best Buy, Co. Inc.*, No. 08 CIV. 8427 LBS, 2010 WL 4159566, at \*12 (S.D.N.Y. Oct. 13, 2010), *aff'd sub nom. Bishop v. City of New York*, 518 F. App'x 55 (2d Cir. 2013) (dismissing equal protection claim based on plaintiff's race because plaintiff failed to allege similarly situated comparator who was treated differently); *King v. New York State Div. of Parole,* 260 F. App'x. 375, 379–80 (2d Cir. 2008) (affirming dismissal of equal protection class of one claim where petitioner "failed to identify a single individual with whom he can be compared for Equal Protection purposes"); *see, e.g., Rossi v. Fishcer*, No. 13-CV-3167 PKC DF, 2015 WL 769551, at \*13 (S.D.N.Y. Feb. 24, 2015) ("Courts in the Second Circuit have emphasized that 'it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently.'") (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994)). The Court will grant the motion for summary judgment in Defendants' favor on the equal protection claim.

### 3.   Connecticut Constitutional Claim under Article First, Section 9

This Court previously declined to exercise supplemental jurisdiction over Holley's claim under Article First, section 9, of the Connecticut Constitution because the Connecticut Supreme Court had not recognized a private right of action for damages in the context of an inmate's classification. Ruling (ECF No. 32 at 7). In his Notice (ECF No. 71), Holley requests reinstatement of this state law claim in light of the Connecticut Supreme Court's decision in *Anthony A*, which held that section 9 guarantees an inmate the procedural protections of *Wolff* prior to a sex offender classification based on nonconviction information. *Anthony A.*, 2021 WL 2492759 at *14. The Court declines this request, because *Anthony A.* did not recognize a cause of action for damages under section 9 for assignment of a STN score without adequate process.

The Connecticut Supreme Court has recognized a private cause of action for monetary damages under Article I, sections 7 and 9 of the Connecticut Constitution where the claims arose out of unreasonable searches and seizures and unlawful arrest by police officers. *Binette v. Sabo*, 244 Conn. 23, 47-49 (1998). In reaching its decision, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. *Anthony A* considered only section 9's procedural protections for an inmate sex offender classification in the context of a habeas petition. At present, the Connecticut Supreme Court has still not recognized a private right of action for damages under Article First, section 9, in the context of an inmate sex offender classification. Accordingly, the Court will not reinstate Holley's Article First, section 9 claim because it raises new and undeveloped issues of state law. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raises a novel or complex issue of State Law....").

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment [ECF No. 61] is GRANTED, Holley's substantive due process claim is DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii), and the Court declines to reinstate Holley's claim under Article First, section 9, of the Connecticut Constitution.

The clerk is instructed to close this case.

SO ORDERED at Hartford, Connecticut this 15th day November 2021.


_____/s/_____

Michael P. Shea, U.S.D.J.

27